MICHAEL MULVEY *vs.* PROVIDENCE GAS COMPANY.

JULY 5, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Master and Servant.   Negligence.   Burden of Proof.*
Plaintiff was working under a main gas pipe, when a plate in an elbow of the pipe came off, and he was injured by the escaping gas;  after the accident, the plate and its connections were found unbroken, and were put back on the apparatus and remained in working order thereafter.   There was no evidence of a leak at the joint, and experts on both sides agreed that a leak at this particular point was unknown, and that a plate, such as was used, was never known to come off of its own accord.   It appeared in evidence that the engagement of the plate was ample to sustain the pressure of the gas;  that the valve was not defective, and the screw was tight:—
*Held,* that the cause of the accident was purely a matter of conjecture upon the evidence, and, there being no evidence of negligence on the part of the defendant, either in the construction or condition or assembling of the mechanism, the plaintiff had failed to sustain the burden of proof and a verdict for defendant was properly directed.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and overruled.

BLODGETT, J. This case is before the court upon the plaintiff's exceptions to the direction of a verdict by the trial justice in an action for negligence, and upon certain exceptions to the admission and rejection of evidence at the trial.

In the first count of the declaration, the plaintiff alleges negligence in that the defendant "used and employed in the operation of its said work or manufactory a certain pipe and, to wit: valve thereon of such character and condition and with such appliances with defects, the danger of which defects was then and there unknown to the said plaintiff . . . but of which said defects in said pipe and, to wit: valve thereon the defendant knew, or but for want of reasonable care and diligence would have known," and that "said to wit: valve then and there suddenly, to wit: broke, gave way, separated and exploded with great force and let large quantities of flame," etc. The second count avers that the defendant "did not exercise a reasonable inspection so as to keep and maintain in safe repair its said pipe and valve" and thereby permitted them to become defective so that they became unfit "to bear the usual and ordinary strain and pressure, of, to wit: gas thereon when in use for the purposes for which the same were intended" causing the explosion. The defendant pleaded the general issue.

The evidence tended to show that the plaintiff, an employee of the defendant, was at about 6:20 P. M., on November 20, 1907, injured by an outrush of gas through an opening in an eighteen-inch iron pipe leading from the generator to the carburetor on No. 4 set in the defendant's works at South Station, the outrush having been caused by the removal or coming off of a handhole plate, a circular disk about one foot in outside diameter, set at an angle in an elbow of the pipe, and clamped to the pipe by a Norway iron cotter bar and set screw. The water-gas set, consisting of a generator, carburetor, and superheater, was installed in 1904, on a concrete and stone foundation more than eighteen inches thick, through which the plaintiff and McHugh were digging a trench with a drill and sledge, the striker being at the time of the accident almost

directly under the pipe and plate which gave way. Sometime before the accident, the time given varying from three months to eighteen months, the plate, cotter bar, and screw had been taken off, the cotter bar which came with the set broken, and a new bar of Norway iron and a new screw put in its place. With this exception the plate had never been off the pipe from the time the set was installed. After the accident the plate, cotter bar, and screw were found in the trench about two feet from the pipe, with nothing broken, and within an hour were put back onto the apparatus with no change whatever except the removal of the old lead and the addition of new, to ensure an impervious joint. The plate bar and pipe thus put back have been in working order ever since, without being once removed. There was no evidence that the joint on the particular machine leaked prior to, or at the time of, the accident, and the experts, both for the plaintiff and the defendant, agreed that they had never known of a leak at this particular point in the apparatus, and had never heard of a plate, such as was used on set No. 4, coming off of its own accord.

The plaintiff introduced evidence tending to show that the upper edge of the cotter bar extended above the upper edge of the lug on one side of the pipe so that the bearing between the lug and the cotter bar was not as great as the thickness of the cotter bar, and relied upon this alleged defect, and the fact of the accident, to maintain its case against the defendant.

It appears from the testimony that the pressure on the disk or plate did not and could not exceed one and one-half pounds to the inch, and that the engagement was ample to sustain that pressure. The evidence shows, too, that the valve was not defective, that the screw was tight, and that there was no leak in the joint; not does the plaintiff attempt to deny these facts. The cause of the accident is thus left to be purely a matter of conjecture, unless it be, in fact, as suggested by the defendant, that a fellow employee, McHugh, who was standing almost under the cotter bar and striking the drill with his sledge, inadvertently hit the cotter bar in raising his sledge for a blow. The plaintiff contends that this was not done, but

there seems to be no other explanation of the cause of the accident. In this connection it is to be observed as to his credibility, that the plaintiff testified at the trial in November, 1909, that he was first taken to a hospital, where he remained for two weeks, and had been attended by a doctor from that time "up to the present time," a period of about two years, and specified such physician by name. In an application, in his handwriting, for employment as a motorman, made June 6, 1909, and filed as an exhibit in the case, in response to the inquiry printed therein: "How long since you consulted or were attended by a physician," he writes "Never." After having previously testified, at the trial, that before the accident his sight and hearing were both "all right as far as I know," and that his eyes had never troubled him in any way, he then testified as follows (p. 25): "Q. 199. How have your eyes been since the accident? A. Not quite so good. Q. 200. Which eye, if any, has bothered you the most? A. Right eye. Q. 206. And the other one is not quite as bad, you say? A. It don't seem to be. One is quite sore. Q. 208. Now the ear, how is your ear? A. The right ear sometimes is all right and sometimes I feel kind of a something in it the same as water, and deaf. Q. 238. Does this accident—or since the accident how is your vision when you look at things; good, bad or indifferent? A. Well, it is bad with regards to me work now when I am going towards lights. When there is one light there is two lights until I get right beside it. Q. 239. You see double? A. Yes. Q. 240. How much does that trouble you that way? A. If I am reading I see two lights instead of one and I have to stop." In the application aforesaid he wrote the following answer to the question, "Have you received any injury to the eyes?" "No." "Is your sight and your hearing perfect?" "Yes."

We fail to find in the testimony in the case any evidence of negligence on the part of the defendant with reference to the construction or condition or assembling of the mechanism in question, and we are compelled to the conclusion that the plaintiff has not sustained the burden of proof which the law

casts on him in that behalf, and that a verdict, if rendered in his favor would not have been supported by the evidence; and we are of the opinion that the verdict was rightly directed for the defendant.

The other exceptions of the plaintiff are without merit, and the case will be remanded to the Superior Court with direction to enter judgment for the defendant on the verdict.

*A. B. Crafts, J. P. Brennan,* for plaintiff.
*Edwards and Angell* for defendant.
*Francis B. Keeney, Seeber Edwards,* of counsel.